[Taylor et al. v. Kolb.]

# Taylor *et al. v.* Kolb.

*Petition for the Writ of Mandamus.*

1. *Mandamus—in what cases issued.*—The writ of mandamus can only issue to some officer required by law to perform some mere ministerial act, or to a judicial officer to require him to take action, but not, in a matter requiring judgment or discretion, to control or direct him in the exercise of either.

2. *Same; court may exercise discretion in issuing.*—Although the party applying for a writ of mandamus may clearly show a legal right which has been violated and the remedy for which is mandamus, the court will not interfere if the case involves in a collateral manner the rights of parties who have no opportunity of defending their interests.

3. *Same ; to enforce duties under Code, 1886, § 352.*—The duties to be performed by the judge of probate, sheriff, and clerk, under Code 1886, § 352, requiring them to appoint three inspectors of election, "two of whom shall be members of opposing political parties, if practicable," are not purely ministerial, but require judicial judgment and discretion. and consideration of evidence ; and therefore mandamus, while it lies to compel them to act, does not lie to control their action.

4. *Qualification of inspectors of election.*—Where the statute requiring officers to appoint inspectors of election does not require the persons appointed to have educational qualifications, the courts can not add such requirement, and annul an appointment of persons who can not read or write.

APPEAL from the Circuit Court of Madison county.

Tried before the Hon. HENRY C. SPEAKE.

Petition by Reuben F. Kolb for a writ of mandamus to Thomas J. Taylor and others. The writ was granted, and respondents appeal.

OSCAR R. HUNDLEY and TANCRED BETTS, for the appellants. Before the writ of mandamus can issue, it must appear to the satisfaction of the Court, that the legal remedy clearly exists, and that the petitioner has no other remedy at law. 49 Ala. p. 471. The duties prescribed by section 352 of the Code are partly ministerial and partly judicial. The appointment of the inspectors is a ministerial duty, but that portion of the statute which provides that "two of whom shall be members of opposing political parties, if practicable," is a judicial duty since it is left entirely in the discretion of the officials to decide as to whether it is practicable or not. The power to determine this fact is vested entirely in the board composed of the probate judge, clerk, and

sheriff.   When a subordinate body is vested with power to determine a question of fact, the duty is *judicial.   People v. Troy*, 78 New York, p. 33.

The relator must show that he has a clear right to the performance of the act or duty demanded, that on demand respondents have neglected or refused performance, and that there is no other adequate remedy to which he can resort. Moses on Mandamus, 204.   *Withers v. The State*, 36 Ala. 260.   *Speed et als. v. Cocke*, 57 Ala. 215.   The petitioner in both the original and the amended petition, fails to aver that two of the inspectors were not members of "opposing political parties."   It is not sufficient to aver that none of the inspectors were of the political party favorable to petitioner, nor is it sufficient that at the time of the filing of the petition there was no other ticket in the field, except the tickets headed by Jones and Kolb respectively, for the republican party could have put out a ticket the day before the election.   It is a presumption to which the courts always give heed, that officers of the law in the discharge of their official, sworn duties, have complied with the law, until it is *affirmatively* shown to the contrary.   It must be presumed that the respondents in appointing the inspectors, appointed at least one democrat and one republican, and petitioner fails to negative this fact.   The fact *if true*, that the inspectors appointed at some of the boxes were all for Jones, is not a sufficient averment, for one of the inspectors might belong to the opposite political party and might be for all the other candidates on the Kolb ticket, and to say that the writ should be granted because one of them was not for *Kolb*, would in effect allow every other candidate on Kolb's ticket to ask the same remedy, wherever an inspector was for all the other candidates except himself

The petitioner fails to show a clear legal right in himself to the relief prayed for, 13 Ala. 817; 71 Ala. 428.   All the parties on the Kolb ticket should at least have been made parties complainant.

An inspector of an election is an officer receiving pay for his services, and as such must be made a party to any proceedings to oust him.   49 Ala. 44; 57 Ala. 443; 52 Ala. 89, 48 Ala. 584.

It is imperative that previous to making application, an *express demand* to perform the act complained of must be shown to have been made and refused.   *U. S. v. Boutwell*, 17 Wall. 604; 86 Ala. 471.   The petition does not sufficiently aver that this demand has been made and refused.

[Taylor et al. v. Kolb.]

The inspectors having been appointed, they are officers, and can not be removed except by proceedings in the nature of *quo warranto.* Code of Ala. sec. 3170, 49 Ala. 44-57.

The requirement of section 352 of the Code, that "two of the inspectors shall be of opposing political parties," was framed for the protection of *political parties,* and to secure a fair election, and not for the benefit of any *one candidate* on any particular *"ticket."* The petitioner in the case at bar, seeks redress for himself *individually,* and not for the political party of which he claims to be a member. The so-called "Jeffersonian Democratic Party," is not an "opposing political party" under the purview of sec. 352 of the Code. *United States v. Paxton,* 40 Fed. Repr. 136. The appointment of one democratic inspector at each box, is the appointment of an inspector of petitioner's political party.

COLEMAN, J.—Reuben F. Kolb filed the present petition for a writ of *mandamus,* the purpose of which is to have vacated and annulled the appointment of certain parties as inspectors of an election made by the judge of probate, sheriff and clerk of Madison county, and to command them to appoint others in their stead. The petition is filed under section 352 of the Code of 1886 which provides that these officers or any two of them "must at least thirty days before the holding of any election in their county appoint three inspectors for each place of voting, two of whom shall be members of opposing political parties, if practicable," &c. The petition throughout shows that it is filed by the petitioner in behalf of himself and no other person. The respondents moved to quash the petition for insufficiency and also demurred to the petition, assigning various grounds for cause of demurrer. The first question presented is, whether the petition shows that there were two opposing political parties interested in the election within the meaning of the statute, to one of which he belonged, and that the officers whose duty it was to appoint inspectors failed to comply with the statute. The petition is verified by affidavit, and the facts averred, are sufficient in our opinion to show that there were two opposing parties to one of which petitioner belonged. It states there were two State conventions held and each convention nominated a full State ticket, for all State officers except that the party of petitioner made no nomination for judges of the Supreme Court; that one convention nominated Thos. G. Jones for governor, and that petitioner was the nominee of the other convention, and that no other party had candidates before the people for election

[Taylor et al. v. Kolb.]

The petition shows that the officers appointed three inspectors for each place of voting, but avers that neither of the three belonged to the party which nominated petitioner for governor. It may. be admitted that as between petitioner and the respondents, petitioner shows a clear, legal specific right and a disregard of this right by respondents, but does it show a case for *mandamus?*

In *Ex parte DuBose*, 54 Ala. 278, we adopted as a sound principle of law "that cases may arise where the court will not grant a *mandamus*, when the granting thereof will, in a collateral manner decide questions of importance between parties who are not parties to the proceedings, and have had no notice or opportunity to interpose their defenses. . . . Although it were certain that the party applying had a legal right, and that it has been violated, and that the law would afford him a remedy, and which remedy is conceded to be *mandamns*, . . . the court will not interfere in a case involving in a collateral manner the right of parties who have no opportunity of defending their interest."

There is an extremely difficult question presented by the record. Does the appointment of inspectors involve judgment and discretion, or is it the exercise of a merely ministerial duty? The trial judge held that it was purely ministerial, and that the writ would lie, and yet the judgment rendered upon the proceedings was that which pertains to a judicial question. It is sometimes difficult to determine whether an act is judicial or ministerial. The general principle is as clearly stated in the case of *The United States v. Guthrie*, 17 How. (U. S.) 285, 304, as any we have found, and is the rule in this State. It is as follows : "The only acts to which the power of the courts, by *mandamus*, extends, are such as are purely ministerial, and with regard to which nothing like judgment, or discretion in the performance of his duties, is left to the officer ; but that wherever the right of judgment or discretion exists in him, it is he, and not the courts, who can regulate the exercise." "It seems to be held by all the authorities, that the writ of. *mandamus* can only issuse to some officer required by law to perform some mere ministerial act, or to a judicial officer to require him to take action ; but not in a matter requiring judgment or discretion, to direct or control him in the exercise of either." *Ex parte Echols*, 39 Ala. 698 ; *Ex parte Burns*, 92 Ala, 102. And in *Ex parte Thompson*, 52 Ala. 98, it is thus stated, "when the power is clearly defined and enjoined, does not involve the exercise of discretion or judgment, and no alternative is left to the officer charged with its execution; when

he must act without enquiry, *and without evidence*, and the mode of action is expressly declared, the power is purely ministerial. When, however the power involves the exercise of judgment and discretion; when it is to be exercised only in an ascertained event, and on the occurrence and existence of particular facts, and the officer charged with the execution of the power must determine whether the event has arisen, or the facts exist requiring its exercise, then the power is judicial, or in its nature judicial." *Ex parte Harris*, 52 Ala. 87. The case of *Grider v. Tally*, 77 Ala. 422, properly construed, does not conflict with these well settled principles. When the act to be performed is purely ministerial, *mandamus* not only requires action but specifically defines the particular act to be done, and the manner in which it shall be done, so that the court or judge issuing the writ, may know whether its order has been obeyed. If the writ leaves a discretion to the officer, room to exercise judgment as to whether and in what manner the mandate shall be carried out, if it be necessary to hear the evidence to determine whether the mandate has been performed, then the mandate, in such form, for the performance of a ministerial act, is imperfect and irregular, and is of that character to be rendered where judicial action is ordered.—*Ex rel Harrell*, 59 Ala. 321; *Davidson v. Washburn*, 56 Ala. 596.

The judge acting upon the petition, annulled and vacated certain appointments, which had been made, but ordered the officers to proceed to appoint others. The order did not name the parties whom the respondents should appoint as inspectors, but left it to them to determine who should be appointed, in fact, he decided, that the appointments which had been made, were not in accordance with the statute, and vacated and annulled them, and then simply compelled action. Now if the act to be performed was purely ministerial the judge issuing the mandate knew precisely the persons to be appointed, and would have named them, and ordered their appointment. The very fact that he did not know and could not ascertain except by evidence *aliunde*, and the exercise of judgment upon that evidence, conclusively, resolves that the question is of a judicial character, and not purely ministerial.

How is it to be determined whether a person belongs to one party or another? Can it be ascertained without evidence, and the exercise of judgment and discretion? What are the tests? It not only requires evidence to fix the status of party affiliation, but we see difficulties rising in the solu-

tion of this question, which, under our system of popular
elections, calls for the interposition of legislation. Ques-
tions not hitherto adjudicated in this State, and none exactly
similar in other States, so far as we have been able to dis-
cover by investigation, arise under the statute, the decision
of which involve not only judgment and discretion, but the
application of new principles. The statute requires the
appointment of inspectors for each voting place, two of
whom shall be members of opposing parties, if practicable,"
&c. When this statute was first adopted, there were but
two opposing parties, the Democratic and Republican, and
it is possible, that these two parties alone were in the legis-
lative mind at its adoption, but we consider its verbiage and
spirit extends to any and all opposing parties. The difficul-
ties arise in defining what constitutes a political party, and
what is the test of membership of a party? In the case of
*The United States v. Paxton*, 40 Fed. Rep., 136, a question
arose whether one J. O. Farnell was a well known member
of a political party opposed to the party to which the clerk
of the court belonged, under the act of Congress of June
30th, 1879, which provided that the judge should appoint a
jury commissioner who should be a well known member of
the principal political party in the district opposed to that
to which the clerk might belong." The court heard the evi-
dence, which in some respects was conflicting, and decided
the question upon the facts. Says the judge who rendered
the opinion; "I think it must be admitted that it has always
been understood that those who have acted with a political
party, voted its ticket, maintained its doctrines, and attended
its meetings were members of the party." The court fur-
ther said : "Will that act permit the court to *exercise its dis-
cretion*, [italics are ours] and appoint," &c. In the subse-
quent case of *United States v. Chaires*, 40 Fed. Rep. 820, con-
sidering the same statute, the court uses this language : "The
judge, in the exercise of a sound discretion under the re-
sponsibilities of his office, directed by the statute, passes
upon the qualifications of the jury commissioner he ap-
points." *In re Supervisors of Elections*, 43 Fed. Rep. 859,
application was made for the appointment of supervisors.
The provision of the statute required that the supervisors
should be "citizens residents of the city or town or of the
election district or parish who shall be of different political
parties," &c. The court makes use of this language : "But
in all cases there should be evidence, whether obtained from
one source or the other showing, that applicants or persons
recommended possess the statutory qualifications as super-

[Taylor et al. v. Kolb.]

visors." These cases are cited to show, that in determining the statutory qualifications, in the one case, that of jury commissioner, in the other, that of a supervisor of elections, in both, the persons to be appointed should belong to opposing political parties, the judge or court exercised discretion and acted upon evidence. Where the act to be performed, involves the introduction of evidence, and the exercise of judgment and discretion, the act is judicial and not ministerial, and *mandamus* will not lie, to control judicial discretion. The authorities are uniform to this proposition. The petitioner further complains that some of the inspectors appointed can neither read nor write. It may be that inspectors of elections could better perform the duties of inspectors if they possessed an educational qualification, but the statute does not require it, and the courts can not add to the statute. The objection of petitioner based upon the averment can not be maintained. By section 355 of the Code contingencies may arise, when there are no qualifications for inspectors, except that they be "qualified electors entitled to vote at that polling place, in the election then to be held." Our conclusion is, the duties to be performed under section 352 of the Code by "the judge of probate, sheriff, and clerk in the appointment of inspectors are not purely ministerial, but require judicial judgment and discretion, and the writ of *mandamus* will not lie to control their action. If they refuse to act, *mandamus* will lie, to compel action, but having acted, if error or wrong was committed, it can not be remedied by *mandamus*. If error or wrong was wilful, or from corrupt motives it may be that the parties subjected themselves to impeachment or possibly to a criminal prosecution, for some offense, but these questions are not before us. As we said in a former part of this opinion further legislation may be needed, but we can now only consider the statute as we find it. An order will be here made quashing the petition.

Reversed and rendered.