34 So.2d 576

### ALABAMA CARTAGE CO,. Inc. v. INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, etc.

### 6 Div. 627.

Supreme Court of Alabama.

March 25, 1948.

Horace C. Wilkinson, of Birmingham, for appellant.

John L. Busby, of Birmingham, and Warren E. Hall, of Atlanta, Ga., for appellees.

BROWN, Justice.

The bill in this case was filed by the appellant against the appellees "The International Brotherhood of Teamsters, Chauf-

feurs, Warehousemen and Helpers of America" doing business in Jefferson County, this state, as a voluntary unincorporated international labor union through its Local Union No. 612 and the officials thereof, seeking injunctive relief, mandatory and prohibitive, to compel the defendants to call off a strike which had been called by them and implemented by the individual members of said local named in paragraph 4a of the bill, by picketing the complainant's place of business and interfering with the conduct thereof and to prohibit such picketing.

Complainant's right to relief is based upon the breach of the provisions of a collective bargaining contract entered into between the parties, the individuals named at the time being the employees of the complainant, who loaded and operated the complainant's fleet of trucks in the movement and distribution of perishable goods throughout the Birmingham district. The contract is attached to and made Exhibit "A" of the bill and the preamble of said contract is in the following words:

"The Alabama Cartage Company, hereinafter referred to as the Employer and Local Union No. 612, Birmingham, Alabama, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, A. F. of L., hereinafter referred to as the Union, agrees to be bound by the following terms and provisions covering wages and working conditions." Article 1 reads: "It is understood that this agreement shall cover all employees under the jurisdiction of Local Union No. 612, engaged in Local Cartage Delivery Service, Warehousemen, Helper and Local Van Drivers." Article 5

shall first be taken up between the Employer involved and the Union."

Article 13 reads: "Any employee desiring a leave of absence from his employment shall secure written permission from both the Union and the Employer. All leave of absence shall not be issued for less than thirty (30) days, and not to exceed sixty (60) days. Extended leave of absence shall be subject to the approval of the Employer and the Union. Failure to comply with this provision shall result in the complete loss of seniority rights of the employee involved. Inability to work because of proven sickness or injury shall not result in the loss of seniority."

Article 16 reads: "The Employer has the right to make and enforce any operating rules which do not conflict with any article of this agreement. All such rules shall not become effective until after forty-eight (48) hours of posting upon the regular used 'bulletin board.'"

Article 17 reads: "The term 'Driver' or 'Chauffeur' shall be construed to mean the operator of a truck, motorcycle, passenger, horse-drawn vehicle or any other vehicles used for transportation purposes and shall include employees engaged in delivery service on foot or bicycle or by similar methods when used to defeat the purpose of this Agreement."

Article 18 reads: "All employees shall be paid in full weekly on regular established pay days for all time worked each week, and furnish each employee with an itemized form showing a true account of earnings (gross and net, overtime hours and rate, and all deductions)."

The contract was executed on the part of respondents and complainant as follows:

"International Brotherhood of Teamsters Chauffeurs, Warehousemen and Helpers of America, Local Union #612, Birmingham, Alabama.
By /s/ Robert A. Borden, Its Pres. and Bus. Rep."

/s/ Ala. Cartage Company,
By: /s/ L. D. Nation,
Its: Manager."

reads: "The union and the Employer agrees that there shall be no strike or lockout or tieup without first using all possible means of peaceful settlement of any controversy which might arise. Disputes

The contract was approved as to form by "International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America" by "Thomas E. Flynn, Acting for Daniel J. Tobin, General President,"

and by "Local Union #612 Negotiating Committee: By /s/ Joe Woods, /s/ Lewis Porter."

The bill alleges that "On, to-wit: the 20th day of June, 1947, the International, Local 612, acting by and through W. A. Powers, and the Individuals named in Paragraph No. 4a above, struck or called a strike against the complainant and said individuals named in said paragraph No. 4a ceased work, all of which was done without first using any or all possible means of peaceful settlement in violation of Article 5 of Exhibit A above referred to.

"8. Complainant further avers that the International, Local 612 and the individuals above named, struck and are now out on a strike because M. H. Nabors, the assistant superintendent of the complainant, checked freight onto trucks operated by the complainant. The complainant is advised, informed and believes that on such advise, information and belief, charges and states that there is nothing in the aforesaid agreement of which Exhibit A is a copy which prohibits the said Nabors from checking freight onto trucks operated by complainant and that such service on his part in no way violates the aforesaid agreement of which Exhibit 'A' is a copy.

"9. Complainant avers that it is necessary and essential in the operation of complainant's business that said Nabors, or complainant's superintendent, check freight onto the trucks operated by complainant; that said work cannot, consistent with the proper operation of complainant's business, be trusted to drivers or checkers and that said work was being performed by said Nabors and by complainant's superintendent at the time the aforesaid written agreement was entered into.

"Complainant further avers that the respondents have established a picket line at complainant's place of business in Jefferson County, Alabama, and that the individuals named in Paragraph No. 4, above, are picketing complainant's place of business for and on behalf of Local 612 and for and on behalf of the International.

"10. Complainant avers that the aforesaid strike is in plain and flagrant violation of Article 5 of the written agreement above referred to, of which Exhibit A is a copy; that the effort to implement said strike by a picket line is likewise in plain and flagrant violation of said provision in said written agreement.

"11. Complainant's business has been and is being interrupted and interfered with by said strike and said picketing and complainant has sustained and is sustaining irreparable injury and damage.

"Complainant has been put to great trouble and expense in and about its efforts to defend itself against said strike and said picketing; * * *

"12. Complainant handles a large number of commodities, including many perishable commodities that must be moved promptly. Said commodities are transported to complainant's warehouse for distribution to consignees throughout the Birmingham district and unless said perishables are handled promptly they spoil and result in great loss and damage to the complainant. It is impracticable for complainant to undertake to handle said commodities as long as strike is being conducted and said picket lines are being maintained."

On the submission of the case on the amended demurrer to the bill as last amended the court in a decree rendered on the 16th of July, 1947, held the bill without equity as to the individuals named in paragraph 4a who constituted in whole or in part said local union and were the employes of the complainant and had been accepting and receiving the benefits of said contract, which the bill alleges they violated in calling the strike and picketing; but sustained the equity of the bill as against the union and its officials. From this decree the complainant appealed.

The decree states:

"The Court is of the opinion that the scope of the injunction granted is greater than was justified under the allegations of the Bill. For example the respondents were enjoined from picketing. Picketing is usually, but not always, engaged in as an incident to a strike. It may be and has often been engaged in where no actual strike exists. This right is guaranteed by the Constitution of the United States without abridgment unless the privilege is abused.

376

The picketing charged in the bill from aught appearing, is legal. Therefore, the Bill has no Equity in that respect and the injunction should be accordingly modified. However, if further picketing is indulged, it must be kept within legal bounds as respects violence, threats and intimidation, as well as to recognize such limitations thereon as naturally flow from the continued existence of the injunction as modified. For example, advertising "a strike" while the injunction is in effect might constitute a violation of the restraining order.

"The Court is further of the opinion that the bill fails to show, aside from the purported strike and picket line, that any respondent has attempted to disrupt the operation of the Alabama Cartage Company's business, or has interfered with any one seeking to transact business with said Company, or hindered or interfered with any employee of said Company or coerced the said employees and that said Bill of Complaint contains no equity in such of its phases. * * *"

■ It clearly appears from the allegations of the bill that the picketing was carried on in connection with the strike and that the individuals named in paragraph 4a are parties to the contract, bound by its terms. It is familiar law that, " * * * 'A party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right, and no considerations of public policy or morals are involved, and, having once done so, he cannot subsequently invoke its protection.' Sentenis v. Ladew, 140 N.Y. 463, 35 N.E. 650, 37 Am.St.Rep. 569 * * *." City of Birmingham v. Wills, 178 Ala. 198, 212, 59 So. 173, Ann.Cas. 1915B, 746, 177, and authorities cited on pages 212 of 178 Ala., 595 or 173, supporting the proposition laid down in that case. See also City of Huntsville v. Gudenrath 194 Ala. 568, 69 So. 629; City of Mobile v. Smith, 223 Ala. 480, 484, 136 So. 851. The right to picket protected by the provisions of the constitution relating to freedom of speech is a private, individual right, which may be waived and was waived by the individuals constituting the local organization by entering into and becoming parties to the con-

tract which protected the complainant from strikes and they are estopped to exercise this right in connection with a strike which they participated in calling, in violation of the terms of said contract.

■ We are, therefore, of the opinion that the decree sustaining the equity of the bill as to the union and its officers is inconsistent with that part of the decree that sustains the demurrer for want of equity and dismisses the bill as to the individual defendants. So far as the decree overrules the demurrer as to the union and the officials it is affirmed and so far as the decree dismisses the bill as to the individuals, it is reversed and a decree here rendered overruling the general demurrer and remanding the cause for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed and rendered in part and remanded.

GARDNER, C. J., and LIVINGSTON and SIMPSON, JJ., concur.