151 So.2d 619

**J. Mack BARNES et al.**

v.

**STATE of Alabama ex rel. James S. FERGUSON.**

**1 Div. 23.**

Supreme Court of Alabama.

Feb. 28, 1963.

Rehearing Denied April 11, 1963.

MacDonald Gallion, Atty. Gen., Bernard F. Sykes, Asst. Atty. Gen., and John P. Kohn, Montgomery, for appellants.

708

Pierre Pelham, Mobile, for appellee.

Hugh Maddox, Montgomery, amicus curiæ.

SIMPSON, Justice.

Appeal by the State Board of Medical Examiners from a judgment of the Circuit Court of Mobile County granting a peremptory writ of mandamus directed to the Board commanding it to issue Dr. James S. Ferguson a Certificate of Qualification to practice medicine, under the reciprocity statute, § 267, Title 46, Code of Ala.1940, as amended.

This case has a strong emotional appeal for an affirmance of the judgment below, because the good people of Coffeeville seem almost unanimous in their desire to have their doctor accredited to practice his profession in that community. Nevertheless, there are certain legal principles which govern this case and all others like it and we perforce must be so governed in our decision. We are frank to say that if we were to act on the case as a de novo proceeding we might not reach the same conclusions as did the Board. But we do not so sit, nor should the learned trial court have so viewed the proceeding before him. His court, like this Court, sits in such cases as a reviewing court and is governed by the principles we shall hereafter advert to.

Appellee was duly licensed to practice medicine by the State of California. Upon having disputes with other staff members over treatment of patients and difficulties with nurses over the care of his patients, he was excluded from the use of Palo Verde

Hospital facilities. He then set up and operated his own clinic for about fourteen months in Blythe, California. Then after having serious marital vicissitudes, he left California, taking with him his six children, and went to Mexico. There appellee allegedly divorced his wife, married one Sally Perez, a former employee, later divorcing her and then remarrying her.

In September, 1958, appellee came to Coffeeville, Clarke County, Alabama, and engaged in the practice of medicine under an arrangement with another doctor. In December, 1958, he applied for reciprocity to the Alabama Board of Medical Examiners, which was denied after due deliberation and he was ordered to cease and desist further practice of medicine. When appellee was present before the Board on this occasion, appellee answered that it was "none of their business" when asked about his former background in California. The Board on ten other occasions considered the application and each time denied a reciprocity certificate.

The Board had before it voluminous evidence—almost all favorable from former patients in Blythe and laymen in Coffeeville—but almost all unfavorable from other physicians in Clarke County and in California. The unfavorable evidence in the form of documents, memoranda, personal correspondence, tended to show that appellee was considered a mental case, and that kidnapping charges had been lodged against him in California and Florida for the taking of his children without authority. Lay testimony at the trial was favorable to appellee's licensure, but they admitted a lack of qualification to pass on the professional proficiency, and mental and emotional stability of appellee. The reports to the Board from the California doctors stated in substance that Dr. Ferguson was a mental case, a psychopath, not gifted with insight due to a considerable quantity of narcissism and immaturity, and that he had performed major surgery in his unlicensed clinic. The Board had evidence of a contempt order against appellee showing that he had "cussed out" a judge and struck a bailiff in a courtroom in California.

■ After the first hearing before the Board it recommended that appellee have a psychiatric examination by Dr. Tarwater, head psychiatrist of the Alabama Mental Hospital. Dr. Tarwater's first report, and also the report of a psychologist, were unfavorable to appellee's licensure. A second examination was subsequently conducted which tended to show that appellee was mentally and emotionally competent to practice medicine. Then a third report was sent to the Board by Dr. Tarwater which stated in effect that the second report and the first report should be considered together, the second not contradictive of the first. Any further examination into the evidence concerning appellee's mental and emotional background would serve no useful purpose. Suffice it to say that there was substantial evidence upon which the Board could predicate a refusal of licensure.

The trial court entered a finding that appellee was morally fit, and mentally and emotionally competent to engage in the practice of medicine; and that the Board arbitrarily withheld the issuance of the Certificate of Qualification. The trial court in ordering the peremptory writ of mandamus put great stress on a violation of appellee's rights under the Fourteenth Amendment, in particular that appellee was denied due process in the Board's denial of licensure. Quoting from the decree:

"The court finds no substantial evidence that there was ever a hearing conducted by The Board which anywhere nearly meets the minimum requirements of 'due process'. The evidence relied upon by The Board was in the main hearsay, or otherwise incompetent, illegal or not relevant."

The paramount questions on this appeal are whether appellee had a right which was subject to the protection of the due process clause, and if so, was appellee denied due process by the Board? Numer-

ous other points have been raised by the parties and will be treated by the Court.

■ Appellant contends that appellee had no "property right" to engage in the practice of medicine in Alabama until all reasonable requirements set by the Board are met. We find authority to the contrary. In State ex rel. Dally v. Woodall, 225 Ala. 178, 142 So. 838, the Court, speaking through Justice Thomas, stated:

> "The right to follow lawful employment of any ordinary and harmless calling, and *that of entering the profession* duly and reasonably regulated under the police power, are of constitutional guaranty that may not be abridged, and *are property rights that may not be arbitrarily denied without due process of law,* and as to which the equal protection of the law may not be denied or withheld." (Emphasis added.)

■ It therefore appears that under the above stated principle the appellee did have a property right subject to the protection of the "due process clause".

Appellant submits that we should follow the case of State ex rel. D. Elleen B. McAvoy, M. D. v. Louisiana State Board of Medical Examiners, 238 La. 502, 115 So.2d 833, which held that there is no property right to practice medicine in one state merely because of licensure in a sister state, and there being no property right there would be no occasion to observe due process and give an applicant a contradictory hearing. We are greatly impressed with the reasoning of that decision, and would be tempted to follow it, as it is practically identical factually, but being bound by the concept of stare decisis, we must adhere to the Woodall decision.

■ Having determined that appellee has a property right subject to the protection of the "due process clause", we turn to a consideration of whether appellee was denied due process by the Board. It appeared in evidence without dispute that appellee was before the Board on two occasions, having had a reasonable notice beforehand. At his first hearing, December 17, 1958, he was very uncooperative with the Board concerning his past conduct. Appellee met with the Board for about an hour on that occasion. Appellee then appeared before the Board on September 23, 1959, and was present before the Board for about twenty minutes.

■ In Evans v. Evans, 200 Ala. 329, 76 So. 95, our Court construed due process as follows:

> "For due process of law means notice, a hearing according to that notice, and a judgment entered in accordance to that notice and that hearing. That is to say, the Fourteenth Amendment to the federal Constitution guarantees that the defendant shall be given that character of notice and opportunity to be heard which is essentially due process of law. It has been held that when this is done, the requirements of the Constitution are met, and that it is not for the Supreme Court of the United States to determine whether there has been an erroneous construction of statute or common law by the state court."

Then in MacMahon v. Baumhauer, 234 Ala. 482, 175 So. 299 (a case involving a property right) the Court held that the owners could not be divested of their right except by due process of law—"due notice and right to defend or maintain such right of property". See also Bolte v. Schmale, 258 Ala. 373, 62 So.2d 797, wherein it was held a denial of due process to adjudicate rights without notice and hearing to the adversary. Thus, from these cases we derive the formula for due process of law, the elements of which are a due notice of a hearing and a hearing on the merits. The annotator aptly states the concept of due process in 16A C.J.S. Constitutional Law § 622, p. 822:

> "Due process of law requires an orderly proceeding adapted to the nature

of the case, in which proceeding the citizen has a right and an opportunity to be heard and to defend, protect, and enforce his rights * * *."

The record clearly reflects that appellee was accorded "due process" in accordance with the foregoing principles. The trial court specifically stated that the bad faith of the Board was not in issue. We therefore fail to see how appellee was denied due process of law.

■ Moreover, it appears that appellee never requested an opportunity to present the Board with evidence of his moral qualifications nor did he ask to be allowed to examine the evidence the Board had against him. It is well known that a failure to assert constitutional rights at the appropriate time and place constitutes a waiver of those rights. City of Huntsville v. Gudenrath, 194 Ala. 568, 69 So. 629; City of Birmingham v. Wills, 178 Ala. 198, 59 So. 173; City of Mobile v. Smith, 223 Ala. 480, 136 So. 851. It was stated by the Court in Vernon v. State, 240 Ala. 577, 200 So. 560, cert. den., Vernon v. Wilson, 313 U.S. 559, 61 S.Ct. 837, 85 L.Ed. 1519:

> "So also, * * * one may waive and does waive his constitutional rights if he fails to assert or claim them at the appropriate time and place and according to the established course of procedure."

■ In Alabama Cartage Co., Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen, 250 Ala. 372, 34 So.2d 576, 2 A.L.R.2d 1273, the following statement of the rule of waiver was approved:

> " 'A party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right, and no considerations of public policy or morals are involved, and, having once done so, he cannot subsequently invoke its protection.' "

Appellee having failed to assert his rights before the Board, and otherwise acting extremely uncooperative, those constitutional rights, if any, which were denied by the Board are deemed to have been waived forever. See also Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; and Michel v. State of Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83.

■ The reciprocity statute, § 267, Title 46, in part, provides that the Board may establish reciprocal relations with other states provided the applicant passed an equivalent examination on the same branches of medical learning in that other state and provided the same standard of proficiency is maintained; and when reciprocal relations have been established a certificate of qualification *may be issued* without examination in behalf of any person who presents evidence that he has complied with the requirements of a reciprocating state board. It is manifest that the Board has the discretionary power to grant or refuse a reciprocity license to practice the healing arts. The granting of the license is a matter of legislative grace, as the regulation of the practice of medicine is a proper exercise of the police power of the state and the legislature may delegate the authority to a Board to perform administrative functions which the legislature might perform and may authorize the Board members to exercise "legislative discretion". State v. Friedkin, 244 Ala. 494, 14 So.2d 363; Marcet v. Board of Plumbers Examination, 249 Ala. 48, 29 So.2d 333; Weill v. State ex rel. Gaillard, 250 Ala. 328, 34 So.2d 132.

After having read the entire transcript consisting of some 1,115 pages, we are fully convinced that the order of the Board denying licensure was not an abuse of the discretionary power granted the Board. The evidence before the Board was more than "substantial" to allow a denial of licensure. Gainer v. Board of Education of Jefferson County, 250 Ala. 256, 33 So.2d 880; Hodges v. Board of Education of Geneva County,

245 Ala. 64, 16 So.2d 97; Marcet v. Board of Plumbers Examination, supra.

We might easily lay this opinion to rest at this point, but due to the importance of the case and its emotional appeal, a discussion of other points, which would demand a reversal, are perhaps in order.

■ The burden is upon the applicant to satisfy the Board as to the requisite qualifications to practice medicine in Alabama. See Pillans v. Johnson, 262 Ala. 689, 81 So. 2d 365, and also Fernel v. State Board of Medical Examiners, 91 Cal.App. 712, 267 P. 561. Good moral character is naturally one of the primary qualifications. The Regulations of the Board in effect at the time of appellee's application, in part, provide:

> "The Board reserves to itself the exclusive right of passing upon the standards of qualification of the various states from which applicant may be accepted without examination; and it further reserves the right to reject an applicant on moral, ethical, or unprofessional grounds, in the event that a careful investigation of the applicant seems to justify."

Appellee was given opportunities to present favorable evidence concerning his licensure and chose not to do so except from lay witnesses; there was no favorable evidence before the Board from other doctors, who had known appellee as a practising physician. The Board not having extensive investigative facilities must to a large extent rely upon information furnished by the applicant. Here, many of the references furnished by appellee were unfavorable to his licensure. Appellee having failed to satisfy the Board as to his good moral character, and mental and emotional stability, and the Board having much evidence to the contrary, it was within their reasonable discretion to refuse to grant him a certificate of qualification.

■ The lower court entered a finding that the Board erroneously considered hearsay evidence in arriving at a denial of a license to appellee. The rule is clear that in the absence of a statute to the contrary, administrative boards are not restricted to a consideration of evidence which would be legal in a court of law, but that they might consider evidence of probative force even though it may be hearsay or otherwise illegal. See Love v. Mississippi State Board of Veterinary Examiners, 230 Miss. 222, 92 So.2d 463; State v. Louisiana State Board of Medical Examiners, supra; In re Anastaplo, 366 U.S. 82, 81 S.Ct. 978, 6 L.Ed. 2d 135. Therefore, the evidence considered by the Board, even though it might have been hearsay in a court of law, was properly considered by the Board in arriving at its decision.

■ It is contended on this appeal and was contended below, that the lower court erred in granting a trial de novo of this cause, and that the scope of review should have been limited to a consideration of the question of whether the Board acted arbitrarily, capriciously or abused its discretion. We agree. In 42 Am.Jur., Public Administrative Law, § 217, the following appears:

> "In the absence of statutes or other factors affecting the customary scope of judicial review, it is settled that on review of administrative determinations it is not for the courts to substitute their judgment for findings of fact made by the administrative authorities. The courts may not make an independent determination of the matters before the administrative authority on all the evidence, as upon a trial de novo, and are without power to make any findings or contrary findings of fact, for to annul an administrative finding of fact solely on the ground that the evidence would have warranted a different finding would be to substitute the judgment of the court for the judgment of the administrative agency upon matter purely administrative, and this cannot be done. The judicial inquiry into the facts goes no

further than to ascertain whether there is evidence to support the findings."

By way of analogy see Gainer v. Board of Education of Jefferson County, 250 Ala. 256, 33 So.2d 880; wherein it was held under a statute authorizing a review of Board proceedings by the Circuit Court, that a trial de novo is not authorized by the statute but only a review of the proceedings before the Board to determine whether they are arbitrarily unjust. In Love v. Mississippi State Board of Veterinary Examiners, supra, it was contended on appeal that the trial court erred in refusing to allow a cross-examination of appellant concerning something that was not before the Board. The Supreme Court of Mississippi held, and we think quite properly, that such a cross-examination was not before the Board and that the court correctly restricted the hearing to a review of the action of the Board upon the record before the Board; further, that the hearing before that court was in no sense a hearing de novo. The Mississippi Court clearly indicates that the trial court could consider only evidence that was presented to the Board and that it would have been error to conduct a hearing de novo in the trial.

■ The authorities are clear in this jurisdiction that a writ of mandamus directing the manner of exercising discretion is improper (Gardner v. Stevens, 269 Ala. 213, 111 So.2d 904) and that mandamus does not lie to compel an officer to issue a license where the performance of that duty rests upon an ascertainment of facts or the existence of conditions, to be determined by such officer, in his judgment or discretion. State ex rel. Ducourneau v. Langan, 149 Ala. 647, 43 So. 187; Taylor v. Kolb, 100 Ala. 603, 13 So. 779. Of course, however, if judgment or discretion is abused, and exercised in an arbitrary or capricious manner, mandamus will lie to compel a proper exercise thereof. Ex parte Morrow, 259 Ala. 250, 66 So.2d 130; Williams v. Board of Dental Examiners, 222 Ala. 411, 133 So. 11; Ex parte State ex rel. Ingram Land Co., 208 Ala. 28, 93 So. 820. We per-

ceive that the Board having substantial evidence before it to deny appellee licensure, did not abuse discretion, nor was the refusal arbitrary or capricious. Therefore, we entertain the view that the writ of mandamus was improvidently issued. The lower court, it seems, was directing the manner of exercising discretion, properly vested in the Board when the conditions did not so warrant.

■ Certain rulings of the trial court excluding evidence which was before the Board are complained of as error. The trial court should have admitted all evidence the Board had before it in arriving at its decision not to license appellee. All of this data, hearsay or otherwise, was admissible for a determination of whether the Board abused its discretion. It would not be feasible for a court, in a review of an alleged abuse of discretion, by an inferior tribunal, not to have before it all the evidence which was considered by the inferior tribunal. In no other way could the court intelligently determine whether there had been an abuse of discretion or an arbitrary or capricious refusal of licensure. This is but an application of the doctrine of "multiple admissibility"; that is to say, where evidence is admissible for some legal purpose while being inadmissible for some other illegal purpose, that evidence should be admitted for its legal purpose and considered to that end alone. The evidence might have been patently hearsay evidence and inadmissible in any court of law, but could be considered by the Board and therefore should have been considered by the lower court.

The case of Mott v. Georgia State Board of Examiners in Optometry, 148 Ga. 55, 95 S.E. 867, was thought by the trial court to be directly in point and was relied upon heavily in reaching its decision. We do not feel that it is controlling here because of this distinguishing feature: Mott was already engaged in the practice of optometry and the Georgia Board refused Mott any hearing whatsoever. Thus, the fundamental idea of due process was not followed,

714

i. e., notice and hearing. Had the facts in the case at bar been similar, perhaps a similar result could here be reached. But the facts are so discrepant they present an entirely different legal question on "due process".

For the errors pointed out, it is manifest that the judgment of the learned trial court issuing the peremptory writ of mandamus should be reversed and the order of the Board reinstated.

Reversed and remanded with directions.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.