388 So.2d 981 (1980)
Edward Charles FERGUSON, M. D.
v.
Leon C. HAMRICK, M. D., Chairman of the State of Alabama Board of Medical Examiners.
79-160.
Supreme Court of Alabama.
October 3, 1980.
*982 J. Mark White of Smith, White & Hynds, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Elizabeth N. Petree, Asst. Atty. Gen., for appellee.
TORBERT, Chief Justice.
This appeal is from an order of the Alabama State Board of Medical Examiners revoking Edward Charles Ferguson's license to practice medicine.
Dr. Ferguson was charged with practicing medicine in such a manner as to unwarrantedly endanger the health and safety of his patients with regard to: (1) the quantity of controlled substances prescribed, (2) the frequency of such prescriptions, and (3) the medical judgment exercised in prescribing controlled substances.
The only witness who testified in support of the Board of Medical Examiners' complaint was Mr. Vick McClellan, an employee of the Alabama Department of Public Safety, Bureau of Investigation of Narcotics, who testified that he collected from pharmacists prescriptions which Dr. Ferguson had written between August 1978 and February 1979. Certain prescriptions for large quantities of controlled substances were admitted into evidence. Dr. Ferguson also testified, and various members of the Board of Medical Examiners questioned him regarding specific patients, specific habits, his personal life, and specific prescribing practices and procedures. At the conclusion he was advised that the Board would look into the situation and notify him of its decision. Subsequently, the Board entered the following order revoking Dr. Ferguson's certificate to practice medicine:
The Alabama State Board of Medical Examiners met on October 17, 1979, with Edward Charles Ferguson, M.D., and heard extensive testimony concerning the prescribing of controlled substances by Dr. Ferguson for several of his patients. The Board heard testimony relating to the amount and frequency of controlled substances prescribed by Dr. Ferguson for a number of specific patients and questioned Dr. Ferguson concerning his exercise of medical judgment in deciding to issue the various prescriptions. It was the unanimous opinion of the Board that Dr. Ferguson improperly and excessively prescribed controlled substances to patients; that Dr. Ferguson prescribed Percodan for patients complaining of headaches without properly evaluating the patients; that Dr. Ferguson improperly treated dysuria with Dyazide; that Dr. Ferguson improperly administered intravenous Lanoxin to a patient with tachycardia without ascertaining the amount of Digitalis that the patient had been taking; and that Dr. Ferguson treated patients with excessive doses of thyroid medication without first utilizing adequate screening and diagnostic procedures. It was further the unanimous opinion of the Board that Dr. Ferguson does not possess sufficient medical knowledge to practice medicine without endangering *983 the health and safety of his patients.
The aforesaid considered, it is ORDERED, ADJUDGED, AND DECREED that the certificate of qualification to practice medicine in the State of Alabama previously issued to Edward Charles Ferguson, M.D., be and the same is hereby revoked.
Dr. Ferguson contends that the Board's order should be reversed because (1) it was not supported by a preponderance of the evidence and is procedurally and legally insufficient, since there was no expert testimony produced at the hearing as to the propriety or impropriety of Dr. Ferguson's prescribing practices and (2) the hearing did not comport with the requirements of procedural due process.
Section 34-24-90 of the Alabama Code provides that before a physician's certificate to practice medicine is revoked, he shall have been found guilty of an offense specified therein by a preponderance of the evidence propounded before the board. Section 34-24-105 provides that on appeal of such cases to this court, the decision of the Board revoking a certificate shall not be reversed if it is "supported by the transcript of testimony." Thus, on appeal, an order of the Board revoking a certificate is reviewed to determine if it is supported by a preponderance of the evidence, and if so, it must be affirmed.
There is no requirement that expert testimony be produced at a hearing before the Board of Medical Examiners. The Legislature, in creating the Board of Medical Examiners has vested the authority to judge the professional conduct of physicians in a body wholly composed of medical experts-the body best qualified by training and experience to exercise this authority. Accordingly, there is no prohibition against the members of the Board relying upon their own expertise in reaching a conclusion. Jaffe v. State Department of Mental Health, 135 Conn. 339, 64 A.2d 330 (1949). The existence or non-existence of expert testimony only goes to the evidentiary question of whether the Board's order is supported by a preponderance of the evidence.
The evidence unquestionably establishes that Dr. Ferguson frequently prescribed high quantities of Class II controlled substances. It is common knowledge that many of these drugs lead to addiction or dependency or are otherwise harmful to one's health. Prescriptions for Class II controlled substances were introduced for some forty-five patients of Dr. Ferguson. Many patients were prescribed Class II drugs on a regular basis and in combination with other drugs, including other Class II drugs, and in very large quantities. For instance, one patient was prescribed 620 tablets of Valium, 245 of quaalude, 70 of norgesic forte, 1 ounce tincture of opium as well as other Class II drugs during the eight-month period from August 1978 to April 1979. Another patient was prescribed 665 quaalude and Valium tablets over a forty-one day period. Three other patients were each prescribed an average of 147 percodan tablets a month for six months. One patient was prescribed, over a six and a half month period, 2 ounces tincture of opium, 30 tablets of valium, 195 of quaalude, 240 of percodan, and 216 of mephergan forte.
Of course, it may be necessary to prescribe high quantities of controlled substances despite the risks in some cases, such as terminal cases where the pain is intense; however, the record is silent as to any such situation in this case. Moreover, Dr. Ferguson himself admitted, "I recognize that I overprescribed for certain people," although he did state that he has since corrected such prescribing practices.
We agree with Dr. Ferguson that the preponderance of the evidence does not support the Board's specific findings that he improperly treated dysuria with Dyazide and, in fact, contradicts the finding that he administered Lanoxin without ascertaining the amount of digitalis taken by the patient. Furthermore, we do not find sufficient evidence to affirm the extraneous finding that Dr. Ferguson does not possess sufficient medical knowledge to practice medicine.
*984 Nonetheless, these particular erroneous findings do not warrant reversal. The doctrine that error, in order to furnish a ground for reversal, must be prejudicial is generally applied to review of a decision by an administrative board. 2 Am.Jur.2d Administrative Law § 758 (1962). Moreover, by statute, the harmless error rule is made applicable to the review of a decision of the Board of Medical Examiners. See Code 1975, § 34-24-104; ARAP 45. We find that the erroneous findings are non-prejudicial since the Board's finding that Dr. Ferguson endangered the health and safety of patients by improperly and excessively prescribing controlled substances is supported by a preponderance of the evidence, and serves without more, as a valid ground of revocation of Dr. Ferguson's medical certificate.
Dr. Ferguson also argues that the hearing was conducted in a fashion which denied him due process of law: that it was conducted in "a fashion that was disorderly, unfair, and without any similarity of established rule or order." It is true that members of the Board repeatedly interrupted the direct examination of Dr. Ferguson to ask questions. However, "[a]n appellate court should view with less strictness the procedural aspects of proceedings before an administrative body than when dealing with procedural aspects occurring in a lower court." State v. Alabama Public Service Commission, 293 Ala. 553, 562-63, 307 So.2d 521, 528-29 (1975).
Dr. Ferguson was confronted with the charges against him and was afforded a hearing with representation by counsel. He was allowed to cross-examine the witness against him and to present his own evidence as well as to make closing statements. Furthermore, Dr. Ferguson was supplied with the written findings of the Board based on the evidence. We find from a review of the record that Dr. Ferguson was given notice and the opportunity to be heard, in compliance with the standards announced in Katz v. Alabama State Board of Medical Examiners, 351 So.2d 890 (Ala.1977). Thus, the hearing was not conducted in such a manner as to amount to a denial of due process.
Accordingly, the order of the Board of Medical Examiners revoking Dr. Ferguson's certificate to practice medicine in Alabama must be affirmed.
AFFIRMED.
MADDOX, ALMON, SHORES and BEATTY, JJ., concur.
EMBRY, J., with whom FAULKNER and JONES, JJ., concur, dissents.
EMBRY, Justice (dissenting):
As I see it, at issue in this appeal is not only whether the State Board of Medical Examiners' revocation of Dr. Ferguson's license to practice medicine was supported by a preponderance of the evidence but also whether the hearings before that Board were conducted so as to comport with the requirements of procedural due process of law. I find no suggestion in the record that any promulgated rules or regulations governing procedures similar to those conducted in this case exist or are in effect. Apparently, each hearing of this nature is conducted on an ad hoc basis and not in accord with established precedent to which reference may be made by one charged, or his or her counsel. As the record shows in this case, without established, orderly, and clear guidelines comporting with known precepts of trial procedures, chaos prevails, as it did in these proceedings.
No expert testimony was introduced which in any way reflected on the propriety or impropriety of Dr. Ferguson's prescribing practices in general or with regard to any particular patient. The record is also devoid of expert testimony showing an unwarranted endangerment of the health and safety of any of his patients.
Before revoking any certificate of qualification to practice medicine the Board of Medical Examiners is required to find a person guilty by a preponderance of the evidence propounded before the Board of any of the acts, offenses, or conditions which § 34-24-90, Code 1975, lists as grounds for such revocation.
*985 The evidence before the Board related only to the amount and frequency of controlled substances prescribed for certain patients and Dr. Ferguson's testimony as to the basis of his decision to write certain prescriptions. From this evidence the Board concluded: (1) That Dr. Ferguson improperly and excessively prescribed controlled substances to patients; (2) That he used improper evaluation and diagnostic procedures; and (3) That he lacked sufficient medical knowledge to practice medicine. Clearly, the evidence before the Board affords no basis for finding Dr. Ferguson's practices were improper or that his medical knowledge was insufficient relative to proper medical practices or the requisite knowledge of medicine. Therefore, the record does not contain sufficient evidence to support the Board's order. The right to engage in the practice of medicine is a property right which may be denied by the State only if the requirements of due process are complied with. Greenfield v. Hamrick, 341 So.2d 136 (Ala.1976); Barnes v. State ex rel. Ferguson, 274 Ala. 705, 151 So.2d 619 (1963).
In Katz v. Alabama State Board of Medical Examiners, 351 So.2d 890 (Ala.1977), the requirements of procedural due process in cases such as this one were stated:
"`* * * an orderly proceeding appropriate to the case or adapted to its nature, just to the parties affected, and adapted to the ends to be attained; one in which a person has an opportunity to be heard, and to defend, enforce, and protect his rights before a competent and impartial tribunal legally constituted to determine the right involved; representation by counsel; procedure at the hearing consistent with the essentials of a fair trial according to established rules which do not violate fundamental rights, and in conformity to statutes and rules, conducted in such a way that there will be opportunity for a court to determine whether the applicable rules of law and procedure were observed; revelation of the evidence on which a disputed order is based and opportunity to explore that evidence, and a conclusion based on the evidence and reason. * * *"'
I would hold that these are minimum requirements of procedural due process which were not met in this case and which should be adhered to in every case. Absent an Administrative Procedures Act, I would have this court set the rules by which the Board would conduct proceedings of this nature.
That nature of due process is not afforded where the Board relies on its own expertise rather than presenting expert testimony by witnesses subject to cross-examination. See Garney v. Anderson, 56 Ill.App.3d 677, 372 N.E.2d 151 (1978); Cleary, McCormick's Handbook of the Law of Evidence, § 353 (2d Ed. 1972).
In this case, because no expert evidence was introduced, not only was Dr. Ferguson deprived of an opportunity to cross-examine, explore, or refute such evidence, but the record furnishes no factual standard for the Board's conclusions and therefore no standard by which this court may determine whether his activities unwarrantedly endangered the health and safety of his patients. McKay v. State Board of Medical Examiners, 103 Colo. 305, 86 P.2d 232 (1938).
I would reverse the order of the Alabama State Board of Medical Examiners revoking Dr. Ferguson's license and remand this matter to that Board for proceedings to accord with my expressed views.
FAULKNER and JONES, JJ., concur.