PER CURIAM
The appellants-Roberts, et al.[1], received an adverse ruling from the State Oil and *911 Gas Board. The appellant pursuant to § 9-17-15, Ala.Code (1975), appealed to the circuit court. The circuit court’s action was adverse to appellant and he now appeals to this court.
The appellant, through able counsel, raises several specific issues; however, the dis-positive issues are whether the Board’s ruling was supported by the evidence and whether due process was complied with at the Board’s hearings.
We find no error requiring reversal and affirm.
The facts in pertinent part are as follows:
Appellant-Roberts owned 120 acres of land that, prior to 1978, was included in the Smackover Gas Pool of Big Escambie Creek Field. Thereafter, in 1978, the Oil and Gas Board excluded the section including Roberts’s land based on evidence that this section did not contain hydrocarbons in paying quantities.
In 1979, an amendment to § 9-17-12, Ala.Code (1975), became effective. Briefly, that statute, inter alia, establishes limits on the acreage of each drilling or production unit. It also provides that the drilling units can be enlarged to include adjoining lands “provided such action is justified by sufficient technical data, indicating that such acreage or land in excess of the aforesaid maximum limitations is being drained or is in imminent danger of being drained and that the owners of such said excess ... cannot otherwise receive their just and equitable share of production from the pool being so drained.... ”
Roberts sought to have the Big Escambia Creek Field enlarged to include his adjoining land in accordance with the above statute.
A hearing by the Oil and Gas Board was held in June, 1981, to consider Roberts’s petition to enlarge the Escambia Field to include Roberts’s property. At that hearing, representatives of Exxon, the operator of the units in Escambia Field, were present to oppose Roberts’s petition. That hearing, for one reason or another, was continued until August, 1981.
At the August hearing, testimony was heard and at the conclusion the Board advised both parties that they would take the matter “under advisement” and that both parties would be allowed to submit post-hearing briefs. The briefs were submitted in September, 1981, and after considering the same, the Board informed both parties that another hearing would be held so that the parties could present any additional evidence which would help the Board resolve the factual issues. Roberts protested strongly against holding this additional hearing.
The hearing reconvened in October and the Board allowed Louisiana Land and Exploration Company to intervene. Louisiana Land and Exploration was a lessee in the Big Escambia Creek Field.
At the conclusion of the hearings, the Board ruled that Roberts did not submit sufficient credible technical data to establish that Roberts’s land was underlain by hydrocarbons or that the Big Escambia Creek Field units were draining hydrocarbons from under the land.
From that adverse ruling Roberts sought judicial review pursuant to § 9-17-15. In addition, Roberts added a second count claiming that the Board members had deprived Roberts of rights secured under the Due Process and Equal Protection clauses of the fourteenth amendment to the United States Constitution. Roberts also alleged that the Board had violated certain state constitutional rights.
In connection with the second claim against the Board, Roberts sought discovery by way of deposing the individual members of the Board.
The circuit court found that there was ample evidence to support the Board’s ruling that Roberts’s land should not be included in the Big Escambia Creek Field. Furthermore, the trial court granted summary judgment against Roberts on the violation of due process claim and would not allow Roberts to depose the Board members. Thereafter, Roberts appealed the trial court’s actions.
*912 In brief Roberts, through able counsel who has provided this court with an excellent brief, presents four issues:
(1) Whether the trial court erred in determining that there was evidence to support the Board’s ruling.
(2) Whether the Board violated Roberts’s due process rights by reopening the hearing in October and by allowing Louisiana Land and Exploration to intervene in the hearing.
(3) Whether the Board encroached upon the legislature by disregarding certain provisions of § 9-17-12, Ala.Code (1975).
(4) Whether the trial court erred in granting summary judgment to the Board on Roberts’s claim of due process violations. 42 U.S.C. § 1983.
I
Under § 9-17-15, Ala.Code (1975), orders of the Board are presumed to be prima facie correct. It is the function of the trial court to determine whether there is evidence which supports the Board’s ruling. It is not the function of “appellate courts” to substitute their judgment for findings of fact made by an administrative authority. Barnes v. State, 274 Ala. 705, 151 So.2d 619 (1963).
Cases such as the one at bar are by necessity very complex. The issues are very technical and call for expert testimony from people that specialize in the areas of geology, mining and drilling. Suffice it to say that expert testimony was offered that indicated that Roberts’s land was not underlain by hydrocarbons and that Big Es-cambia Creek Field wells were not draining off hydrocarbons from Roberts’s land.
According to one set of experts, the gas reservoir did not extend onto Roberts’s land to any great extent and where it did extend, the gas was in contact with water and could not be commercially productive. The Board found that these experts were more convincing and ruled accordingly. It is not the function of the trial court, nor is it this court’s duty, .to substitute its judgment for that of the Board’s. Barnes v. State, supra.
II
Roberts contends on appeal that the Board violated his due process rights by reopening the hearing in October, 1981, to hear further evidence. We do not agree.
Following the second hearing in September, the Board took the matter “under advisement.” Thereafter, the Board notified both parties that the Board would hold a third hearing at which it would hear additional evidence. The Board then entered an order continuing the matter until October.
Section 9-17-7(f) requires that the Board “shall take such action with regard to the subject matter [of the hearing] as it may deem appropriate” within thirty days of the conclusion of the hearing.
In addition, Rule L-23 of the Board’s Rules and Regulations states that “the Board shall promptly take such action as it may deem appropriate concerning the subject matter being considered by the Board, such action to be evidenced by oral order read or stated into the record granting, denying, continuing, amending, or other appropriate action.... ” (Emphasis supplied.)
In addition, certain other rules of the Board allow the Board to continue a hearing without new notice if it is done at that hearing. In this case, the Board provided new notice to the parties that a third hearing would be held.
From the above it is evident that the Board had not entered a final order and that it followed the proper procedure for continuing the hearing by notifying both parties within thirty days of the August hearing.
The supreme court has held that the requirements of due process in the context of administrative proceedings are: an opportunity to be heard; to be represented by counsel; to have fair procedures; and to know on what evidence an order is based along with the opportunity to confront that evidence. Katz v. Alabama State Board of Medical Examiners, 351 So.2d 890 (Ala.1977). Furthermore, an appellate court should view the procedural aspects of pro *913 ceedings before an administrative body with less strictness than when dealing with procedures in a lower court. Ferguson v. Hamrick, 388 So.2d 981 (Ala.1980).
Keeping all of the above in mind, this court is satisfied that Roberts’s due process rights were not injured by holding the third hearing.
Regarding the intervention of Louisiana Land and Exploration, § 9-17-7 provides that any person having an interest in the subject matter of the Board’s hearing shall be entitled to be heard. Louisiana Land and Exploration Company is a lessee in the Escambia Field and in view of § 9-17-7, intervention was a matter of right in that Louisiana Land and Exploration Company had an interest in the matter before the Board. In any event, this court is not convinced that Louisiana Land and Exploration Company’s intervention was detrimental to Roberts’s case by way of unfair surprise or otherwise.
HI
Roberts next contends that the Board encroached upon the legislature by refusing to follow § 9-17-12 regarding enlarging existing gas units and applying their own standards. Put another way, Roberts contends that the Board refuses to enlarge an existing unit beyond limits that they themselves have defined and such action of the Board violates state due process requirements.
This court finds no evidence that the Board refused to follow § 9-17-12 and applied their own standards.
Section 9-17-12 allows the Board to expand existing drilling units to certain limits if it finds that the land to be included is, among other things, being drained of underlying hydrocarbons. The Board in this instance found that Roberts’s land was not underlain with hydrocarbons; therefore, they declined to enlarge the Escambia unit. This court fails to see how the Board could have done otherwise in view of the requirements of § 9-17-12.
We are not persuaded by Roberts’s argument that the Board has set “fixed” limits on the size of fields and refuses to enlarge them. There is nothing to indicate that the Board did not rely on the geological evidence in determining not to enlarge Big Escambia Creek Field. See Kent Corp. v. N.L.R.B., 530 F.2d 612 (5th Cir.), cert. denied, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976).
IV
In view of the above, this court finds that the trial court did not err in granting summary judgment to the Board on Roberts’s claim of federal constitutional violations.
Roberts’s argument in this respect is based essentially on the same set of facts as those discussed above. In connection with this second claim, Roberts sought to go outside the record and depose the individual members of the Board as to their reasoning behind their refusal to enlarge Big Escam-bia Creek Field to include Roberts’s land.
In view of the above, the evidence clearly supports the trial court’s actions. No error can be found in failing to allow depositions to be taken. The trial court was not in error in granting summary judgment in the instant case where both claims rested on the same operative facts.
This case is due to be and is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
BRADLEY, J., recuses himself.

. All appellants, being in the same situation, will be addressed simply in the singular as Roberts.