146 So. 393

## ALL STATES LIFE INS. CO. v. TILLMAN.

### I Div. 737.

Supreme Court of Alabama.

Jan. 19, 1933.

Rehearing Denied March 9, 1933.

Outlaw & Seale, of Mobile, for appellee.

Harry T. Smith & Caffey, of Mobile, for appellant.

BOULDIN, Justice.

The action is upon a group policy of life insurance issued by appellant to the state of Alabama, insuring the lives of state employees.

J. R. Tillman, an employee of the state, in full compliance with the plan of insurance, signed an authorization card for the required deduction from his salary as his monthly contribution to premium for group insurance; the individual certificate was issued to him as per contract; and, without question, he continued to be an insured employee until February, 1931, when he ceased to be an employee of the state. The insurer had notice of this fact, and thereupon marked his card

canceled of March 1, 1931. He re-entered the employ of the state in August, 1931, and thereupon resumed payment of his monthly premiums by way of deductions from his salary from month to month, and so continued until his death in November, 1931.

But no report was made to the insurer that the insured had re-entered the employ of the state, no new card was filed, no new certificate issued to him, and, as we understand the testimony, the monthly premiums paid by the employer did not include the premiums for such coverage; the insurer had no knowledge of the re-employment, or of the renewed deductions from his salary, until after the death of the insured. So far as its records go, he ceased to be of the insured group from and after March 1, 1931.

Was the employee insured under the group policy at the date of his death?

■ It is quite well settled by our decisions that the payment by the employee of his monthly premium through a deduction from his monthly salary by his employer, who, by prearrangement, is to retain the same, and make payment of monthly premiums on the group policy, is payment to the insurer so far as such employee is concerned.

The entire plan of insurance enables the insurer to do business with one party in this regard, and provision is made in the policy before us by which the employer and the insured shall keep check of the employees who are insured from time to time, and of the payment of their premiums. The insurer issues no receipt to the insured employee for premium paid; he is provided with no means of knowledge as to the business operations between the employer and insurer; and, having fully performed by continuing in the employment, and paying his contribution to the premium in the manner devised in this scheme of insurance, he must be considered of the group covered by the policy. Pacific Mut. Life Ins. Co. v. Watson, 223 Ala. 571, 137 So. 414; Atkinson v. Travelers' Ins. Co. of Hartford, 202 Ala. 226, 80 So. 48; Continental Casualty Co. v. Vines, 201 Ala. 486, 78 So. 392.

But, admittedly, the initial employment in this case terminated. By express terms of the policy the insurance ends with the employment. Indeed, the coverage of the policy, in the nature of it, extends only to employees.

Appellant insists that the insurance on the life of this employee terminated March 1, 1931; that, upon re-employment by the state, his status was the same as a new employee; that in such cases a new application card must be filed, and a new individual certificate issued to him; and, hence, not being one of the insured after his re-employment, the collection of premiums by the state was wholly without authority, and not binding on the insurer, unless and until such facts became known to and approved by the insurer by acceptance of the premium or otherwise.

In the solution of this, the vital question in the case, a rather full synopsis of the contract is first set out.

The group policy issued to the state of Alabama June 1, 1929, was on the one-year renewable plan; renewable at the option of the state by continuing to pay premiums. That it continued in force until the death of the insured employee here involved is not in doubt.

The group policy stipulated, that, "in consideration of the application of the *employer*, an advance premium (naming the amount) and of such further premiums as are provided for herein," the insurer "agrees to pay, subject to the terms and conditions of this policy, the amount determined by the Plan of Insurance hereinafter contained, immediately upon receipt of due proof of the death of *any employee* of the State of Alabama." (Italics supplied.)

The "plan of insurance," as to the amount of insurance to each employee, and the monthly premium rate, need not be set out, as no question thereon is involved. Pertinent provisions of the "plan of insurance" are:

"The amount of insurance on any Employee insured hereunder, and the date on which said insurance shall become effective, shall be determined as follows: * * *

"Persons now insured as of June 1, 1929, are as shown on list hereto attached, marked Exhibit 'A,' and made a part hereof. Employees not now insured may become insured by signing authorization cards in the form shown by authorization card attached hereto, marked Exhibit 'B,' and made a part hereof, provided such cards are signed during the months of June and July, 1929. Present employees, not now insured may become insured after August 1, 1929, by signing proof of health satisfactory to the company. Persons employed by the state subsequent to June 1, 1929, may become insured by signing authorization cards, in the form hereinabove set forth, without proof of health during the thirty days following the first sixty days of employment, and thereafter by proof of health during the thirty days following the first sixty days of employment, and thereafter by proof of health satisfactory to the company.

"In no event shall any insurance on any particular employee be effective until or unless the monthly premium herein provided for shall have been paid to the company."

Then follow these stipulations:

"*Employees Insured*—Employees are automatically insured in accordance with the terms of the plan of insurance above, subject to the terms of this policy.

"The employer shall furnish the company with the names of all employees as they be-

come eligible for insurance hereunder, with the information as to each, necessary to determine the age, the amount of insurance, and the effective date of the insurance.

"Unintentional neglect on the part of the employer to furnish the name of any employee eligible for insurance hereunder shall not invalidate the insurance on the life of such employee.

"*Termination of Insurance*—The insurance on any Employee shall cease upon the termination of his employment, except as hereinafter provided. If an Employee is disabled, given leave of absence, or temporarily laid off, the employment need not be considered terminated, provided the insurance is continued on all absent employees under like conditions.

"The employer shall notify the company of all employees whose employment shall terminate and also the dates of the termination of their employment.

"*Premiums*—All premiums are payable in advance at the home office of the company, but may be paid to an authorized agent of the company upon delivery of a receipt signed by the president or secretary, and countersigned by said agent. If any premium shall not be paid when due, this policy shall terminate except as hereinafter provided.

"In addition to the advance premiums there shall be due:

"1. To the company—

"(a) The balance, if any, of the first premium as determined by the amount of insurance on the employees initially insured hereunder such balance to be due when determined.

"(b) A prorata premium for any additional or increased insurance, computed to the next date on which premium shall be due, following the date such insurance is effective.

"2. To the employer—

"A refund of any unearned premium paid for any employee insured hereunder, whose insurance has terminated for any reason, other than death or permanent and total disability.

"The company will issue debit and credit memoranda to the employer on account of new insurance issued and insurance increased and refunds for unearned premiums on insurance terminated. There will be an adjustment at the end of the policy year on account of such debit and credit memoranda.

"*Grace Period*—Thirty-one days of grace will be allowed for the payment of every premium after the first, during which period the policy remains in force. * * *

"*Individual Certificate of Insurance and Conversion Privilege*—The company will issue to the employer for delivery to each employee whose life is insured under this policy, an individual certificate setting forth a statement as to the insurance protection to which

he is entitled and to whom payable, etc. * * *

"*Entire Contract*—This policy, together with the application of the employer, and the individual applications, if any, of the employees insured hereunder, shall constitute the entire contract between the parties hereto," etc.

The insured, Mr. Tillman, signed an authorization card of date March 6, 1930, saying: "I hereby authorize state of Alabama to deduct from my wages or salary the monthly contribution indicated below, until revoked by me, as the premium for group insurance."

This card, showing the date of employment as March 1, 1928, had on the back a certificate of good health signed by the employee.

It will be noted that no proof of good health was required for insurance to begin on his re-employment, treating him as a new employee.

The individual certificate, issued April 1, 1930, was as follows: "This is to certify that under and subject to the terms and conditions of a group policy of insurance No. 104 G, issued and delivered to the state of Alabama by the All States Life Insurance Company, Montgomery, Alabama, the life of Joe R. Tillman is insured for the sum of one thousand dollars payable to"—and naming the beneficiary.

Certain privileges of conversion, embodied in this certificate, are not here involved.

A study of this contract as a whole discloses that it is modeled in the main, if not wholly, on group insurance contracts conforming to the insurance laws of the state of New York. Consolidated Laws of New York, 1930, Insurance Law, chapter 30, § 101-b.

It must be construed as quite a liberal blanket contract, with numerous provisions inserted for the protection of the employee, the insured.

Thus this group policy defines what shall constitute the entire contract. It wholly omits the individual certificate to the employee as a part of the contract. While it is contemplated the employee shall have such certificate as evidence of his inclusion in the coverage of the group insurance, the certificate is issued to the employer, and the rights of the employee would not be affected, if it never reaches him. This is the logical construction of the contract, and the construction given like contracts in other jurisdictions. Seavers v. Metropolitan Life Ins. Co., 132 Misc. 719, 230 N. Y. S. 366; Hardie v. Metropolitan Life Ins. Co. (Mo. App.) 7 S.W. (2d) 746; Thull v. Equitable Life Assur. Soc., 40 Ohio App. 486, 178 N. E. 850; Note 63 A. L. R. 1035.

In defining the "entire contract" as above, we note it includes the "individual applica-

tions, *if any*, of the employees secured hereunder." (Italics supplied.) This certainly indicates that employees may be insured without individual applications.

The "plan of insurance," it will be noted, provides that new employees may become insured by signing an "authorization card," within a limited time after employment. Thereafter, proof of good health must be furnished. This is a manifest safeguard against old employees waiting until health fails, then coming in at will.

The "authorization card," copied above, is what the term imports; the authorization of a deduction from his salary by the state to the amount of his contribution to the premium from month to month. This signed card has none of the earmarks of an application. On the back of the same card is a distinct signed certificate of good health "as a basis for the company's action in accepting the application." Under the terms of the contract there is no occasion for filling this out by a new employee who has without delay executed the "authorization card," designed to protect his employer, as well as to put funds in his hands for the insurer.

These features of the contract must be construed in connection with the clauses beginning "employees are automatically insured," etc.

Giving all these some field of operation favorable to the insured, we think, first, the "employer" not the "employee" is looked to for information touching the names of all those becoming eligible, the amount, and "effective date" of insurance. An effective date is contemplated without such data from the employee in some cases. Some meaning must attach to the stipulation that "unintentional neglect" to furnish even the name of an eligible employee "shall not invalidate the insurance on the life of such employee."

Dealing with the case in hand, this employee had become eligible by his re-employment. He had formerly executed an authorization card good until "revoked" by him. When his former employment ended, there was no subject-matter for its operation. When he re-entered the employment, he and his employer manifestly treated it as unrevoked and still effective, and he proceeded to pay his premiums in the manner authorized until the date of his death. We are of opinion his insurance was then in force.

We have examined the cases relied upon by appellant. None of them appear to deal with analogous facts, nor similar contracts. None hold that an employee within the coverage of the group policy, who is in actual employment, paying his premiums in the manner contemplated until death, is unprotected.

It is said that, so far as the employer is concerned, this is a paternalistic form of insurance. Even so, in its modern development group policies have come to embody quite liberal terms. Insurers have the distinct advantage of dealing, in course of operations under the policy, with one person; the employer to whom the policy is issued. The rules of law construing insurance contracts favorably to the insured, the employee, in this form of insurance, have all the basic reasons for their application here.

On the undisputed evidence, we conclude plaintiff was entitled to recover. It follows, there was no error to reverse.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.