**STEPHENS**

v.

**UNITED STATES STEEL CORP.**

No. 14833.

United States Court of Appeals
Fifth Circuit.

May 14, 1954.

Rehearing Denied June 18, 1954.

Edward H. Saunders, Bessemer, Ala., for appellant.

D. K. McKamy, James R. Forman, Jr., Birmingham, Ala., Burr, McKamy, Moore & Tate, Birmingham, Ala., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

Filed by Lethonia Stephens, plaintiff-appellant, the suit was in certain counts for wages due him by defendant-appellee for work and labor done, and in other counts for damages in tort for the failure of defendant to pay said wages. Still other counts, based on the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., claimed that the appellee had not paid the minimum wage due.

The defendant, in addition to its defenses of no cause of action and a general denial, pleaded (1) payment, (2)

estoppel, (3) waiver, (4) set off, (5) the statute of limitations, (6) receipt and release, (7) accord and satisfaction, (8) that the moneys were paid at plaintiff's request and for his benefit, and (9) subrogation and set off.

**1.** As material here, this is the record:

The plaintiff, Lethonia Stephens, is thirty-nine years of age. He had worked for the defendant and its predecessor corporations off and on for approximately fifteen years. After leaving the service he was re-employed at Muscoda ore mines on Feb. 14, 1950, his badge number being 90, and his social security number being 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. He worked at various times after his re-employment as a section helper, a mine helper, a mine helper (roof picking), and a drill helper. He also received credit for vacation, and upon his finally leaving the employment of the defendant he elected to receive severance pay. In addition, at one time during the period which will be referred to hereafter, the defendant, under an agreement with the Union, made a settlement to eliminate what was called an out-of-line differential and settled a griev-

With the issues thus joined, defendant filed a motion for summary judgment attaching a number of affidavits and exhibits [1] thereto, and the district judge, determining that the pleadings and affidavits did not present a material issue

ance in reference to back pay and vacation pay.

The total amount of pay which the plaintiff was entitled to receive from the date of his re-employment on Feb. 14, 1950, to the date that he left the employment of the defendant, including pay for hours worked, vacation allowances, settlements referred to above, and severance pay, is shown by the affidavits of Mr. J. D. Cole, of Mr. I. E. Gray, and Mr. E. G. Fenn, together with the exhibits attached to Mr. Cole's affidavit numbered 1–A to 78–A, inclusive, which is a copy of the payroll statement given to the plaintiff, Lethonia Stephens, on every pay day during this period. The total amount of this is $7,680.40. These affidavits and exhibits show in what manner this amount was paid to or for the benefit of Lethonia Stephens at his request, which shows as follows:

| | | |
|---|---|---:|
| Cash (including cash advances) | | $ 3,396.68 |
| Deductions: | | |
| 1. | Federal Taxes | $ 319.94 |
| 2. | Garnishments | 133.72 |
| 3. | Debtor's Court Payments | 608.93 |
| 4. | Insurance Payments | 189.85 |
| 5. | Union Dues | 74.00 |
| 6. | Community Chest and Red Cross | 2.96 |
| 7. | House Rent | 109.20 |
| 8. | House Purchase Payments | 456.58 |
| 9. | Mercantile Stores | 801.75 |
| 10. | Medical Fee Payments | 36.95 |
| 11. | Hospital | 460.53 |
| 12. | Lost Badge | .50 |
| 13. | Credit Union | 756.69 |
| 14. | Safety Shoes | 332.12 |
| | Total Deductions | 4,283.72 |
| | Total of Cash Payments and Deductions | $ 7,680.40 |

The affidavits of Mr. J. D. Cole, Mr. I. E. Gray, and Mr. E. G. Fenn, which are attached to the motion for summary judgment and appear in the Record on pages 15 to 22, inclusive, show in detail the method of keeping employees informed as to their earnings and as to any deductions made at their request from their earnings. These affidavits show that on each pay day there is furnished to the employee a detailed statement as to the hours worked, the wages earned, and the deductions made. This statement is given to the employee and when

cash is paid to him, a receipt for the cash is taken, signed by him. A photostatic copy of each of the payroll statements furnished to the plaintiff is attached as an exhibit to these affidavits; also photostatic copies of the receipts signed by Lethonia Stephens and numerous other exhibits, most of which have been referred to in the statement above.

The plaintiff in his affidavit does not deny any of the statements set forth in these or any of the additional affidavits attached to the motion for summary judgment, nor does he claim that at any time

of fact and that defendant was entitled to judgment, gave judgment accordingly.

Plaintiff, appealing from that judgment, is here presenting for our decision this primary legal question, whether appellee in view of Section 201, Title 39 of the Alabama Code of 1940, had the right to deduct from his wages amounts which, at appellant's request, it had paid to various creditors of appellant, while appellee states the question thus: Can appellant have his debts paid for him and keep his wages too. A second, or alternative, question which will require decision only if it is decided that it was a breach of contract to withhold his wages on the ground that they had been paid to others upon assignments and that appellant can have both the debt payments and his wages, is whether for such breach an action in tort for damages will lie.

With commendable, indeed admirable industry and thoroughness, counsel for appellant[2] and appellee have marshaled and presented the authorities each deems controlling or helpful. Viewed as furnishing an opportunity for a dialectical excursion these briefs in name only might repay the time and effort their close reading and analysis would require. Viewed, however, as briefs, as that term is used and understood in our rules and generally, that is as aids to a decision, and in the light of the undisputed facts and the controlling law on the question this appeal presents, it is quite evident that nothing will be gained by a like exuberance on our part.

Indeed, as we see the case, it is in very small compass. As to all the counts except the two based on the Fair Labor Standards Act, no one, including the appellee, denies the existence and the binding force of the statute in cases to which it applies, that is where assignments and orders of the kind prohibited by it are still executory and the effort is to enforce them as such.

Appellee's position was and is that the statute is without application here, first because the payroll authorizations are not the present transfers, the absolute appropriations of a chose in action, which the statute forbids,[3] and, second, because if the authorizations in this case are

---

did he make any protest concerning any of the deductions made from his wages, except that he claims that on Feb. 8, 1953, he protested against the deductions made from the severance pay allowance. These payments, however, had been made before any protest was voiced by him.

These affidavits, with exhibits attached, and the plaintiff's own affidavit, show that the plaintiff, an unskilled laborer, actually worked during a period of three years a total of approximately 3,540 hours. This averages less than twenty-three hours per week. For this work he received for himself, his wife, his mother and his eleven children, food, clothing, house rent, medical, hospital and dental care, insurance, charitable contributions, union dues, repayment of loans, and payments on the purchase of a home, all paid for at his own request by his employer from his wages. In addition, Federal and State taxes, garnishments and Debtor's Court payments were paid under requirements of law by his employer from his wages. In addition, he received six paid holidays each year, three weeks' paid vacation each year, and nearly $100.00 per month in cash. He now seeks to recover $100,000.00 in damages from his employer because it complied with his request to pay from his wages some of the items set out above.

2. Indeed with an industry and devotion worthy of a stronger cause, appellant's counsel, in an original brief of sixty-five and a reply brief of two hundred pages, citing literally hundreds of cases and discussing and quoting from a great many of them, has in a prodigious effort piled Pelion on Ossa and rivaled the labors of Hercules in an effort to show that since Section 201 of Title 39 of the Code of Alabama of 1940 declares void all assignments of, or orders given by, employers covering future wages, the defendant acted wrongfully in recognizing and acting upon them as though they were valid.

3. Andalusia Motor Co. v. Mullins, 28 Ala. App. 201, 183 So. 456; Coleman and Carroll v. Hatcher, 77 Ala. 217; 6 C.J.S., Assignments, § 58; Lee v. Wimberly, 102 Ala. 539, 15 So. 444; Equitable Trust Co. v. First National Bank, 275 U.S. 359, 48 S.Ct. 167, 72 L.Ed. 313; Lone Star Cement Co. v. Swartwout, 4 Cir., 93 F.2d 767.

within the prohibitions of the statute so that while still executory they could not be enforced by suit, they have all been executed, and plaintiff may not take the benefit of payments made under them and deny that the payments were rightfully made on his order.[4]

■ As to the claims under the Fair Labor Standards Act, appellee insists, and we agree, that appellant cannot prevail on them, both because the two year statute of limitations, 29 U.S.C.A. § 255, bars this suit and because there was, upon the record in this case, as matter of law, no violation of the act shown.

Upon this record, showing, as matter of law, that, of the situations, hypothesized by appellant in his lengthy discussion of what the law would be if they existed, none in fact exist, it would serve no useful purpose to decide, or even to discuss, what the law would be if any of them did in fact exist.

As one instance in point, appellant indulges in lengthy discussions of the law of situations where payroll authorizations are made for the benefit of the employer, as where the authorizations are a part of a system by which the employer compels the employee to patronize company owned commissaries, hospitals or medical services out of which the employer makes a profit, and thus uses the pay deduction authorizations to promote its own business interests.

Plaintiff's affidavit [5] filed in opposition to the motion for summary judgment shows with precision the debts for which the deductions now complained of by him were made. It conclusively rebuts the existence of any situation of the kind supposed. It as conclusively establishes

---

Section 201 of Title 39 of the Code of Alabama of 1940, reads as follows:
"All assignments hereafter made by any person of salaries or wages, to be earned in the future, shall be absolutely void. The provisions of this section shall also apply to orders given by employees covering the whole or part of future wages."

4. Brown v. Long, 192 Ala. 72, 68 So. 324; Douglass v. Standard Real Estate Loan Co., 189 Ala. 223, 66 So. 614; Southern Bldg. & Loan Ass'n v. Casa Grande Stable Co., 128 Ala. 624, 29 So. 654; National Trust & Credit Co. v. F. H. Orcutt & Son Co., 7 Cir., 259 F. 830; Ford v. Huff, 5 Cir., 296 F. 652; Cochran v. Cochran, 247 Ala. 588, 25 So.2d 693; Birmingham Trust & Savings Co. v. Strong, 239 Ala. 118, 194 So. 200; City of Birmingham v. Smyer, 235 Ala. 116, 177 So. 630; Alabama Cartage Co. v. International Brotherhood, 250 Ala. 372, 34 So.2d 576, 2 A.L.R.2d 1273.

5. This affidavit, appearing at pages 92 to 107 of the record, thus spells out his claim for $810.08 and itemizes and explains the deductions from it:
"When I went to the office on Feb. 7, 1953, along with Tyler Hooper to get my service pay, vacation pay and wages I was due, wages in the amount of $79.68, and three weeks vacation pay in the sum of $199.20 and severance pay in the amount of $531.20. The total amount coming to me on Feb. 7, 1953, was supposed to be $810.08. Out of this there was cuts that was made by the law, which said cuts was income tax, social security tax, and unemployment tax in the amount of $45.46, and the total amount due me after these cuts was $764.62.
"The amount of cuts that were taken out of my wages, service pay and vacation pay on the 7th day of Feb., 1953, was as follows: Red Cross and Community Chest—26¢; Union Dues—$3.00; Debtor's Court—$30.00; Safety Shoes—$14.-30; Lloyd Noland Foundation Hospital Service—$237.43; John W. Galbreath & Co., $8.19; Union Supply Co.—$166.74; and back indebtedness $304.70. This back debt was for groceries that had been given me and my family by the Union Supply Company by something between the Union, United Steel Workers of America, and my employer. These groceries were to feed me and my family during the strike during the months of May, June, July and part of August, 1952. I don't know whether I owed the Union Supply Company for these groceries or the United States Steel Corporation, or the United Steel Workers of America, but the money was cut out of my pay just the same. I had signed an order on my wages to my employer of some sort down at the union hall for those groceries to the United States Steel Workers of America, and that was during the months of May or June, 1952. I don't know whether the Union or the Company was to pay for these groceries, but I had been cut something on this back debt every pay day since I went back to work in September, 1952."

that the deductions were made for and enured only to the benefit of appellant who requested and authorized them.

█ In the circumstances disclosed by this record, the plainest principles of fair dealing concur with settled principles of law and equity in denying the recovery sought. The judgment was right.

It is affirmed.