PER CURIAM.
Broaddrick, an employee of Alabama Limestone, Inc., sued Blue Cross-Blue Shield of Alabama to recover benefits under a group health insurance contract maintained through his employer. Both parties filed motions for summary judgment on the basis of the pleadings, affidavits, and certain stipulated facts. From a summary judgment entered in favor of the plaintiff, defendant appeals.
Broaddrick and his family were covered by a Blue Cross group hospitalization plan administered through Alabama Limestone. The monthly premium, payable in advance, was $63.39. Of this amount $26.74 was regularly deducted from Broaddrick’s wages; the remaining $36.65 was paid by Alabama Limestone.
On January 1,1979, Blue Cross received a $63.39 premium from Alabama Limestone to cover Broaddrick and his family through January 31,1979. However, on January 17, 1979, Alabama Limestone terminated Bro-addrick. It issued Broaddrick a final paycheck on January 20, 1979, less $26.74 apparently deducted to cover a February health insurance premium.[1] The facts are contested as to when Alabama Limestone discovered the $26.74 error and attempted to refund the amount to plaintiff. However, it is clear that this amount was never remitted to Blue Cross on Broaddrick’s behalf and that Alabama Limestone indicated *1104 to Blue Cross on the February health insurance billing that Broaddrick was no longer in its employ.
On February 11,1979, plaintiffs wife was hospitalized, incurring medical and hospitalization expenses which were not paid by Blue Cross. Plaintiff filed suit June 6, 1979, for $845.50 in benefits under the group hospitalization policy, contending that the January 20, 1979, paycheck deduction established coverage through the month of February. In awarding summary judgment in favor of the plaintiff employee, the learned trial judge apparently relied upon the case of Blue Cross-Blue Shield v. Thornton, 56 Ala.App. 678, 325 So.2d 187 (1975), to find that in withholding plaintiffs portion of the February premium, Alabama Limestone acted as the agent of Blue Cross and thereby bound Blue Cross to provide benefits for the February hospitalization.
The relevant provisions of the health insurance policy are as follows:
“If the Subscriber ceases, with or without cause, to be employed with the group through which he is paying fees at the time of such cessation of employment, this Contract and all rights hereunder shall terminate automatically and without notice as of the date to which fees are prepaid on the date of such cessation of employment.
“The Subscriber and not the Corporation assumes the responsibility for the failure of any Remitting Agent to pay fees to the Corporation when due.
“ ‘Remitting Agent’ means any individual, partnership, organization or corporation which, as agent for the Subscriber, has agreed with the Corporation to collect and remit the fees payable hereunder.”
The first provision quoted is unambiguous — an employee’s entitlement to post-termination coverage is measured as of the date of his cessation of employment. On January 17, 1979, plaintiff’s health insurance coverage was prepaid through January 31, 1979. Accordingly, under the terms of the policy, coverage was provided through the end of that month.
The controversy concerns the effect of the January 20, 1979, payroll deduction. Plaintiff contends that this deduction operates to extend the coverage effective on his termination date, which was set to terminate automatically as of January 31, 1979. For either of the two following reasons, this contention must be rejected.
First of all, this court must accept Blue Cross’s argument that Alabama Limestone was not its agent for the purpose of accepting premium payments. Under Blue Cross-Blue Shield v. Thornton, 56 Ala.App. 678, 325 So.2d 187 (1975), agency questions would normally turn on the facts of the particular case. However, in Blue Cross-Blue Shield v. Fowler, 43 Ala.App. 572, 195 So.2d 910 (1966), cert. denied, 280 Ala. 708, 195 So.2d 919 (1967), clauses which assign to the employee the risk of the employer’s failure to remit deducted premiums were upheld. The Fowler case, especially the opinion on rehearing, makes it clear that despite normal agency rules, an insurance company can contract so as to place the risk of non-remittance of deducted premiums on the covered employee. Id. at 581, 195 So.2d at 918. The clauses relied upon in the present case are very similar to the ones in Fowler. They go so far beyond merely reciting that Alabama Limestone is the agent of the covered employee for the purpose of collecting premiums; they specifically put the risk of non-remittance on the covered employee. Blue Cross having specifically contracted that Broaddrick would assume the responsibility for Alabama Limestone’s failure to remit deducted amounts to Blue Cross, the trial court erred in deciding that Alabama Limestone acted as Blue Cross’s agent. The Thornton-mandated fact-finding process should have been preserved for a case in which the insurance contract was otherwise silent as to the role of the employer. Fowler, id., at 581, 195 So.2d at 918.
Second, even if it were conceded that Alabama Limestone acted as the agent of Blue Cross in deducting plaintiff’s portion of the premium from the January 20, *1105 1979 paycheck, plaintiff failed to establish either that Alabama Limestone had authority to modify the policy’s express termination provision or that Alabama Limestone’s actions rose to the level of an intentional and knowing modification or waiver of that termination. As discussed above, the payroll — with the health insurance deduction— was sent to a computer center for processing prior to plaintiff’s termination date. Though it is unclear when Alabama Limestone discovered the error and attempted to return the money to plaintiff, it is clear that prior to plaintiff’s wife’s hospitalization Alabama Limestone affirmatively deleted plaintiff’s name from the February listing of covered employees and returned the list to Blue Cross without making a February payment on plaintiff’s behalf. These circumstances are insufficient to indicate a modification or waiver of the express termination provision. See Wiregrass Construction Co. v. Tallapoosa River Electric Cooperative, 365 So.2d 95 (Ala.Civ.App.1978).
In view of the above, the trial court erred in granting summary judgment in favor of Broaddrick. The case is reversed and remanded for entry of a judgment not inconsistent with the above.
REVERSED AND REMANDED.
All the Judges concur.

. The affidavit of Bonnie Straub, Secretary of Alabama Limestone, establishes that the January 20, 1979, payroll was sent to a computer center for processing — with the health benefit deducted — prior to plaintiffs termination date.