Victoria S. Ragsdale appeals from a summary judgment in favor of Life Insurance Company of North America ("LINA"), a wholly owned subsidiary of Cigna Corporation. Ragsdale, an employee of the City of Opelika, brought an action against LINA, the City, and certain of its employees: Robert Shuman, the City's administrator; John James, the City's personnel director; and Doris Strickland, the City's personnel technician. Ragsdale alleged that the defendants were liable for intentional and fraudulent misrepresentation, suppression of material facts, deceit, breach of contract, and negligence. Specifically, Ragsdale alleged that the City, through its employees Shuman, James, and Strickland, misrepresented to her that upon her retirement she would receive disability payments from LINA, the City's group long-term disability insurance carrier. Ragsdale alleged that the three City employees *Page 466 
were agents of LINA. All the defendants moved for a summary judgment. The circuit court denied the summary judgment as to all the defendants except LINA. The summary judgment entered for LINA was made final pursuant to Rule 54(b), Ala.R.Civ.P. Ragsdale appealed. The only issue is whether Shuman, James, and Strickland were agents of the insurer, LINA, for purposes of determining liability for any negligent or intentional misrepresentations they allegedly made to Ragsdale concerning her coverage.
Ragsdale had been an employee of the City's Revenue Department for approximately 12 years. In March 1988, she experienced heart arrhythmia and atrial fibrillation, which were later diagnosed as symptoms of a connective tissue disease, polymyositis. In July 1990, Ragsdale was hospitalized because of blood clots, another symptom or complication of the disease. She did not return to work again. Ragsdale retired on November 2, 1990. On that date, she completed a claim for long-term disability benefits in the City's personnel office. Approximately April 5, 1991, LINA denied Ragsdale's claim for disability benefits, based on a "pre-existing condition limitation." Ragsdale filed a complaint in January 1992.
Ragsdale stated in her deposition that in August 1990 she questioned the assistant personnel technician, Strickland, concerning what benefits she would be entitled to if she were to retire. Strickland, according to Ragsdale, told Ragsdale, in Strickland's office, with Ragsdale's daughter present, that if Ragsdale were to retire, she would receive long-term disability payments each month. Ragsdale stated that Strickland computed what the payment would be, and estimated it to be approximately $860.00 a month.
Ragsdale's testimony is as follows:
 "Q. Did she [Strickland] tell you that you would definitely receive that or that that's what you would receive if you were eligible for coverage?
 "A. No, sir. She told me I would have that as a benefit, that I would have that.
 "Q. Your testimony is, then, that this lady seated over here, Doris Strickland, told you that if you retired due to a medical disability that you would definitely without question receive a certain amount of your salary after you retire?
"A. Okay. Her word was not definitely, no.
 "Q. That's what I'm trying to get to. What words did she use?
 "A. She said I would have eight hundred and sixty dollars [a month] from long-term disability insurance.
 "Q. Did she say anything at all about the insurance company having to make that decision?
"A. No, sir.
 "Q. Did she say that she could make that decision?
"A. No, sir."
Strickland stated in her deposition that she had never represented to Ragsdale that if she retired she would be entitled to disability benefits from LINA.
Ragsdale also stated that before her retirement she spoke to Shuman and that he told her that "if [she] retired with the State of Alabama Retirement System that [she] would have [her] health [insurance], [her] life [insurance], and [her] long-term disability [insurance]." Ragsdale said that he told her this when she called him to request a letter from the City detailing exactly what her benefits would be if she retired. She stated that Shuman did provide her with this letter, which, according to Ragsdale, assured her that she would receive long-term disability payments from LINA. She introduced as an exhibit a letter signed by the mayor of the City of Opelika, dated October 24, 1990, listing the insurance benefits "that the City of Opelika provides to employees that separate from City employment due to a medical disability." The letter includes "Long Term Disability Insurance." It has the notation "RGS:me" at the bottom, indicating that it was drafted by Shuman. Shuman, in his deposition, stated that he did not recall meeting or speaking with Ragsdale about her possible benefits under the LINA policy. He did state that James had told him that one of Ragsdale's options would be to retire and receive LINA's disability benefits. *Page 467 
Ragsdale also stated that James was present when she signed her retirement forms.
Ragsdale stated in her deposition that she called the regional sales manager for Cigna Corporation, Martin Steele, and that he told her "that it was up to the City of Opelika to explain [the policy] to [her]."
Martin Steele testified in his deposition that he did not remember any specifics of his conversation with Ragsdale. Steele testified that LINA alone had the authority to determine whether an individual was entitled to receive benefits under the policy. He also testified as follows, however, in response to questioning by the plaintiff's attorney:
 "Q. Okay. Now, who is responsible for explaining the contract benefits or the policy benefits?
"A. To whom?
"Q. To employees of the City of Opelika.
"A. The City is.
 "Q. And who is responsible for administering the policy?
"A. The City."
The following dialogue also occurred during Steele's deposition:
 "Q. Mr. Steele, since the City's responsible for the administration, who is responsible for instructing the City in how to administer?
"A. How to administer what?
"Q. The policy, the plan, whatever you call it.
 "A. The administration explanation of benefits responsibility is the City's.
"Q. Okay.
 "A. If they had a question about our contract, they would call us and ask us, meaning not the employee. But if someone in the administrative office of the City had a question about how the insurance contract reads, they would call our office.
 "Q. Okay. Would that also be if they had a question concerning benefits payable under the contract?
"A. For a particular claim?
"Q. Yes.
"A. They would call the claims office.
 "Q. Okay. And what about generally whether an individual employee would be entitled to receive benefits? Would that also be directed to the claims office?
"A. Uh-huh (positive response).
". . . .
 "A. Any kind of benefits determination is done by the claims office.
 "Q. What if it's just in general to provide employees with information about the kind of benefits this policy provides?
 "A. General questions about the benefits are done by the City.
 "Q. Okay. Now what if the City has questions concerning general benefits?
 "A. If the employee has a question that they are not sure of, they would call our office for an explanation of the contract.
 "Q. Would that be the employer or the employee of the City?
"A. The City's administrator would call us."
LINA or Cigna sent representatives to train James and Strickland to administer the policy and explain its benefits to the rest of the employees. James stated that the Cigna representatives explained the policy benefits to him and Strickland so that they could explain the policy to the rest of the City employees. His statement was: "Well, they [the insurance company representatives] explained it to both of us . . . [that] we — . . . we're co-, you know, explanators to the benefits." The plaintiff's attorney questioned James during his deposition:
 "Q. Well, I take it that you would know if someone told you that they [the insurance representatives] were there to explain something to you so that you in turn could explain it to others, wouldn't you?
"A. Yes.
 "Q. Do you recall them telling you that when they came to you?
"A. Yes.
 "Q. Okay. So their purpose was to help you help other city employees, right?
". . . .
 "A. Yes, they explained it to us so we would fully understand it. . . . That way if *Page 468 
a person came in and asked any questions, we would be able to answer intelligently."
LINA argues, and the circuit court held, that there was no question of fact to be decided and that LINA was entitled to a judgment as a matter of law because, according to LINA, the long-term disability income policy issued by LINA to the City stated that the City was not an agent of LINA. LINA relies on the following excerpt from the policy, designated as a "Miscellaneous Provision," as support for that argument:
 "ADMINISTRATION. The Insurance Company will deal solely with the Policyholder who will be deemed the representative of each Employee. Any action taken by the Policyholder will be binding on the Employees."
The policy defines "Policyholder" as the employer or the City. LINA argues that the provision quoted above makes the City the agent of the employees and not the agent of LINA.
It is arguable whether the logical implication of this provision would make the City the employees' agent and not LINA's agent. Even if it would, that implication would not be conclusive, however, because "In Alabama, agency is determined by the facts, and not by how the parties may characterize the relationship." Semo Aviation, Inc. v. Southeastern Airways,360 So.2d 936, 940 (Ala. 1978); Battles v. Ford Motor Credit Co.,597 So.2d 688, 689 (Ala. 1992). "If the facts establish the relationship of principal and agent, the intention of the parties is immaterial, and the character of the relationship is not affected by an agreement between the parties that an agency does not exist, or that some other relation does exist." SemoAviation, 360 So.2d at 940.
Furthermore, an apparent agency may arise where the principal has caused third persons to rely upon the appearance of an agency:
 "An agent's authority is measured by the powers which his principal has caused him or permitted him to 'seem to possess.' As to third persons without knowledge or notice, it is not limited to the powers actually conferred and those to be implied as flowing therefrom, but includes as well the apparent powers which the principal by reason of his conduct is estopped to deny."
Patterson v. Williams, 206 Ala. 527, 528, 91 So. 315 (1921);Blue Cross-Blue Shield of Alabama v. Thornton, 56 Ala. App. 678,683, 325 So.2d 187 (1975). Similarly, a defendant that the plaintiff claims is a principal may be estopped to deny agency.Standard Oil Co. v. Gentry, 241 Ala. 62, 1 So.2d 29 (1941);Augusta Friedman's Shop, Inc. v. Yeates, 216 Ala. 434,113 So. 299 (1927).
Several Alabama cases have been decided on the question of whether an employer is an agent of an insurer in administering group policies insuring employees. In Harrison v. Insurance Co.of North America, 294 Ala. 387, 318 So.2d 253 (1975), the Court, noting that "each case must depend upon its own facts," held that the employer was the agent of the insurer for purposes of notifying the employees of changes in the policy. The insurer had notified the employer of a change, but the employer had not notified the employees. The Court held that the change in the policy was not effective as to Harrison, an employee, because Harrison had not received notice of the change.
The Court in Harrison relied in part on All States Life Ins.Co. v. Tillman, 226 Ala. 245, 146 So. 393 (1933), quoting the following statement from Tillman:
 "It is quite well settled by our decisions that the payment by the employee of his monthly premium through a deduction from his monthly salary by his employer, who, by prearrangement, is to retain the same, and make payment of monthly premiums on the group policy, is payment to the insurer so far as such employee is concerned."
Tillman, 226 Ala. at 247, 146 So. at 393; Harrison,294 Ala. at 394, 318 So.2d at 260 (emphasis added in Harrison).
Ragsdale and LINA cite, and relate their arguments to, a case from the Court of Appeals and two cases from the Court of Civil Appeals: Blue Cross-Blue Shield of Alabama v. Fowler,43 Ala. App. 572, 195 So.2d 910 (1966), cert. denied, 280 Ala. 708,195 So.2d 919 (1967); Blue Cross-Blue Shield of *Page 469 Alabama v. Thornton, 56 Ala. App. 678, 325 So.2d 187
(Ala.Civ.App. 1975); and Blue Cross-Blue Shield of Alabama v.Broaddrick, 440 So.2d 1102 (Ala.Civ.App. 1983). In Thornton, the court held that the employer was the insurer's agent. The employer, Gunter-Dunn, paid a group premium to Blue Cross-Blue Shield for its employees' health insurance. Because Thornton had been injured and was not working, he paid his premium directly to Gunter-Dunn for Gunter-Dunn to forward it to Blue Cross-Blue Shield. The Court of Civil Appeals held that Gunter-Dunn was the agent for Blue Cross-Blue Shield, stating:
 "In addition to handling substantial accounting activities for the insurer, Gunter-Dunn provided the means of access Blue Cross-Blue Shield had to the people it covered. That, in a proper case, such an intermediary can be an accessorial agent by estoppel is clear from Standard Oil Co. v. Gentry, and Augusta Friedman's Shop, Inc. v. Yeates, both supra."
56 Ala. App. at 684, 325 So.2d at 193 (emphasis added).
In Fowler and Broaddrick, the courts held that specific written provisions of the policy prevented the insurer from being responsible for an employer's failure to forward premiums. We note that in both Fowler and Broaddrick there was no evidence that the employer acted generally as an agent of the insurer. Broaddrick attempted to distinguish Thornton by saying that a court should engage in the factual inquiry as to agency only when the contract is silent on that point. To the extent that this statement of law is inconsistent with the authorities cited above for the proposition that the facts may override the parties' characterization of their relationship, that an apparent agency may arise, or that the principal may be estopped to deny the agency, Broaddrick is hereby disapproved.Broaddrick and Fowler are correct to the extent that they indicate that a contractual provision denying agency will be enforced if there is no substantial evidence to the contrary.
We hold, after carefully reviewing the record, that Ragsdale did present substantial evidence that an agency relationship existed between LINA and the City. Two of the City's employees, James and Strickland, bore the full burden of explaining the insurance policy to the other City employees. LINA told the City employees that they were to be the administrators of the policy. "[I]t has been stated broadly that an employer as the administrator of an employees' group insurance policy is the agent of the insurer, to whom any omission of duty by the employer in its administration of the policy should be attributable." 44 Am.Jur.2d Insurance § 1851 (1982) (citations omitted).
A fact question was presented as to whether the City was LINA's agent, whether by virtue of the facts of the administration of the contract, by apparent authority, or by estoppel. LINA cannot give the City the full power of explaining the benefits available under the policy and then claim to be exempt from responsibility when the City misrepresents the coverage available to an employee. If Ragsdale's testimony is believed, she may be found to have relied to her detriment on the representations she alleges were made to her by Strickland and Shuman.
James and Steele admitted that the responsibility for explaining the policy was on the City, and that if an employee had a question the employee was to present it to the employer, who would contact a Cigna or a LINA representative. A jury could find from this evidence that the employer, the City, acted as the agent of LINA.
Thus, there is evidence that the policy provision relied upon by LINA, if it does imply that the City was the agent of the employees only, does not represent the true intent or practice of the parties.
As we have stated, whether an employer of workers insured under a group policy is the agent of the insurer must depend on the facts of the case. Harrison v. Insurance Co. of NorthAmerica, 294 Ala. at 394, 318 So.2d at 260. In this case, after carefully reviewing the evidence presented to the circuit court, we hold that it is a question of fact whether the employer, the City, was the agent of the insurance company, LINA. We reverse the summary judgment for LINA *Page 470 
and remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON, KENNEDY, INGRAM and COOK, JJ., concur.